Sure, Your Honor. May it please the court. My name is Edward Wicklund and I'm here representing Ms. Orcutt in her Title II Disability Insurance Benefits Appeal. If you've read the briefing, which I'm sure you guys have looked at throughout this case, it has a long and complicated procedural history. One of the issues is this case goes back to an alleged onset date of 2007. And Ms. Orcutt was initially actually found partially disabled from 2009 through the initial ALJ decision. Ms. Orcutt attempted to appeal the unfavorable portion of the decision and it ultimately did get remanded by a district court back to a new ALJ, but that remand order didn't specify, apparently, that it was of a limited nature. And so the ALJ found plaintiff disabled, rejecting the partially favorable from the entire period. And we are appealing, obviously, that decision today. We take issues with the ALJ's decision here, in this case, for numerous reasons. It should be noted that this case, filed before March 27, 2017, does go back to the old rules regarding the weighing of opinion and evidence, giving treating physicians more weight if they supported by substantial evidence. In this case, we have essentially a Dr. Robinson, who plaintiff had treated with on at least 28 separate occasions that we counted in the record, mainly for workers' compensation. Now, in those treatments, you'll find objective findings mainly related to plaintiff's thoracic spine, where it's continually, without exception, found tenderness, and you'll find decreased ranges of motion in her back, and you'll find occasionally muscle spasm and other examination findings throughout. Now, the ALJ rejected Dr. Robinson's opinion. Let me start over. Dr. Robinson readied two types of opinions throughout this file. He readied opinions for workers' compensation, where he would opine, for example, moderate to social security. We understand that that doesn't mean much, but the ALJ, in this case, rejected those opinions as vague, which is fine. They are somewhat vague. Counsel, could I interrupt you? If I agree with you about that, can I go straight to the chase here, given the limited time? Yeah, absolutely, Your Honor. Yes. Thank you. Dr. Robinson, of course, is the treating physician that had something like five years of history, as you just explained with your client. So, here's the problem I've got. I think 10 different chart notes, including several from Dr. Robinson, where, time after time, her providers were recognizing that she was reporting, in response to these injections, she was receiving really significant relief, 80%, 90%, and lasting four weeks, six weeks, eight weeks at a time, I'm summarizing, to be sure. But, you know, the entries that I'm referring to, between ER 713, all the way through ER 756, there's a whole lot of them. What about that? Isn't that adequate support for the ALJ's decision? Well, she did have some improvement, but it was, you know, temporary with those injections. I don't agree that that is support, because Dr. Robinson ultimately later concluded that, essentially, you know, she was disabled throughout. Her condition was getting worse, and then he did state that, you know, while he initially did detract from surgery, he did state, well, now surgery may be an option. And, sort of, one of the ALJ's, you know, rejections of that opinion was the lack of, sort of, more invasive treatment. But, the circuit has held, you know, injections, and this constant treatment is pretty intense. And, I think that, as time went on, you know, while injections didn't help temporarily, you can see through Dr. Robinson's later notations that plaintiff appeared to be getting worse. And, you know, this is also supported, as well, by, you know, the pain management treatment with Dr. Catania and nurse practitioner Lancastle, who essentially rendered the same opinion, and his chiropractic treatments, which are almost nearly the same in all of those opinions, state that, you know, plaintiff can't sit or stand for the required amounts to work an eight-hour day. And, we have an ALJ here who's saying, with these three opinions, well, with each of those separate opinions, he's going, well, there's nothing in the record that is consistent with this particular opinion. But, he doesn't connect the dots, in that those three opinions are consistent with the record. And, you know, admittedly, if a patient is asked, how much pain relief are you getting, and there's an 80% or a 70% response, you know, I understand that that's not precise, but it does indicate that the patient was reporting significant pain relief for, you know, chunks of time that were six and eight weeks in length. Yeah, Your Honor, but at the same time, though, that same office opined that she can't stand or walk two hours after those injections. Now, while she may have had, you know, relief, you know, I do have to go through the detailed analysis of the record a little better here, but I do believe that throughout and after, she was still getting worse. And, I don't see any, you know, she kept getting treated, but at the same time, she didn't even attempt to go back to work. You know, she can only work four hours at a time. She can't lift anything. So, you know, while she did have temporary relief, I would say that you'd have to do that every time. She'd have to, you know, the relief seemed to dissipate over time with those injections, too. I think they were higher amounts than lower. So, I would hold that, I would say that Dr. Robinson's opinion is still supported, and it's also supported by the other opinions in the record. Did you want to save some time for rebuttal? I'll save two minutes for rebuttal, Your Honor. And further with this case, we also have a couple issues with the sort of the subjective symptom analysis, and one in that the ALJ says, you know, it seems that she was, you know, because she didn't undergo surgery. We have notations and testimony in the record that Dr. Robinson didn't recommend surgery, and then we have later notations, though, that Dr. Robinson later did, was considering that she might need to potentially undergo surgery. So, her subjective symptom complaints, you know, we don't, and there was really nothing to say that she was any sort of a lingerer or doing anything. There was no examinations where she was out of character. I mean, her examination findings were consistent throughout. She essentially did everything she needed to do. She was consistently treated. So, we feel that the ALJ's rejection of plaintiff's credibility based on testimony four years later that she had a part-time job doesn't suffice for, you know, the period at issue, Your Honor. Thank you, counsel. We'll save your time on the clock for you. Is opposing counsel ready? Yes, Your Honor. Thank you very much. May it please the court, Daniel Talbert for the Commissioner of Social Security, Andrew Saul. As Mr. Wicklund has noted, this case essentially has two issues, and they're fairly typical issues in social security disability cases. Evaluation of a medical source opinion and of a claimant's symptom testimony. The ALJ applied the correct legal standards and made specific findings supported by substantial evidence on each of those issues, and therefore the Commissioner asks this court to affirm the ALJ's findings and decision. I want to start off just by going specifically to the issue of Dr. Robinson's opinion, and as Judge Christian was discussing with Mr. Wicklund, the issue of improvement from injections. And I would just point out and just echo what Judge Christian was saying there, that as the ALJ noted, the claimant didn't need surgical intervention or anything like that. She experienced significant relief from those injections. Now, Mr. Wicklund has indicated that the relief was only temporary or partial, and it's true that the record shows the relief was temporary insofar as it lasted 6, 8, 10, 12 weeks at a time. But the record also shows that the claimant was receiving these injections periodically so that once one injection would stop being effective, she would be scheduled for another injection and get some significant improvement for a period of time again. The other point I want to make there is that my friend indicated that the claimant's condition was worsening after the injections, and she had some relief, but then it got worse, and then Dr. Robinson later said surgery would be necessary. That's actually, I would submit, not a fair or suggestions that surgery might prove necessary if other treatment doesn't help, came in mid to late 2009. And after that time, the claimant, maybe through her insurer or workers' compensation, seemed to have approval for fairly regular and routine injections. And after that point, that was where most of those notes Judge Christian was talking about indicated the 60, 80, 90 percent relief for up to 10 or 12 weeks at a time. So the record actually reflects that rather than indicating that there was a worsening of symptoms and that Dr. Robinson tried to avoid surgery but then realized it was necessary, Dr. Robinson actually thought surgery might be appropriate earlier in the time period, but once other more conservative treatment, as in more conservative than surgery, proved significantly effective, surgery wasn't necessary. So the administrative law judge's characterization of this record is, on that point, is fair and accurate and provided a basis for rejecting not only Dr. Robinson's opinion but also the claimant's subjective allegations of pain and other limitations. So the point that the claimant alleges that there is a consistency in terms of medical source opinions and Dr. Sostowski, the examining source, was the only, so to speak, outlier, we would dispute that claim for a couple of reasons. First of all, there's also examining source Dr. Carr, who examined the claimant for her workers' compensation claim, and that doctor said that the claimant should be able to return to her past work. So I would just note that there's actually two examining sources here who conflict with and disagree with Dr. Robinson and those non-acceptable medical sources who gave other opinions. And there's also significant conflict with the treatment records here, the examination findings that, as the ALJ noted, consistently displayed that the claimant had normal functioning other than some tenderness, which is itself something of a subjective report of pain when being touched. I mean, it's not an objective finding like abnormal gait or other kinds of things, and the treatment notes were routinely quite normal in terms of gait, strength, sensation, and other objective findings. I'm happy to address any other concerns or questions that the panel might have. Beyond that, I think we're happy to rest on what we've briefed on this case. But again, I see I have five or so minutes remaining, so if the panel has any specific questions or areas they'd like me to discuss, I'm happy to get in to discuss that further. But I think I've made the responses to Mr. Wicklund that I had outlined, and then I'm prepared otherwise to submit. That's fine. Thank you, counsel. Judge Beatty, do you have any questions? No, thank you. Judge Viderman? Sure. One aspect of the ALJ's opinion concerned me a bit, and it had to do with part of the analysis of finding that Ms. Orcutt was not credible. And this is at, I guess, it's page nine of the ALJ's opinion at the bottom, AR 488. The ALJ said that Ms. Orcutt stated that she and her husband both performed chores, but that her husband, who's on disability for multiple sclerosis, performs the heavy work. And the ALJ found that Ms. Orcutt's testimony that her husband does heavy work is not credible. What was the basis for that particular conclusion of the ALJ? Yes, Your Honor. So the basis for the inference, I would say that that's not credible. Well, I guess I'll start from the beginning here. The claimant testified at the hearing, and I can find the citation for it if Your Honor is interested in that. But the claimant testified at the hearing that her husband received Social Security disability benefits for multiple sclerosis. And the claimant also testified that they divided responsibilities but that in terms of doing some of the heavier cleaning, her husband took care of that. And when the ALJ inquired further, he said, so he's on disability for multiple sclerosis, but you're saying he does the heavy work. And she said, yes, that's right. Maybe I should take a look at exactly where that is in the record, just to pull that up for the court. It's on page 525 of the bottom right. It's excerpts page 645. And then this is where the ALJ says, and he's on Social Security. The claimant says, yes, he has MS. And then the ALJ says, and he does the heavy work. And she says, yeah. And then she says, he does injections every day. He's on medication. They work together, et cetera. But the issue here is the claimant's husband is at that time getting disability benefits from Social Security. And it has therefore been found legally to be disabled, to be unable to work. So the ALJ is making the inference there that in a household that has two people, one of whom is established as disabled by multiple sclerosis, a very serious condition. It could be a very serious condition indeed. That's the husband and the wife who's alleging disability, but who is still able to work part-time and do various other activities, has generally normal physical examination findings, and is getting excellent relief from the injections and other non-surgical treatment that she gets. It's a reasonable inference to make that it wasn't credible to say that the husband who's disabled from multiple sclerosis was doing the heavier work. And that was a permissible- But the heavier work, I'm sorry to interrupt. The heavier work was mopping, vacuuming, and cleaning heavy pots and pans. Are you saying that somebody with multiple sclerosis who is disabled can't mop or vacuum or clean pots and pans? Is that so incredible that the ALJ can say, well, this must be a lie? So a person may be able to do that kind of work in that situation. That's a possible inference, and I think that would be a reasonable interpretation of the record. It's our at whether the ALJ's reading of it was rational, and I would submit that his reading of the record was a rational one. It wasn't the only permissible one, as Your Honor has noted, but it was at least one possible way of reading the evidence. Counsel, respectfully, it strikes me as the very wobbliest portion of the credibility finding. We all know people, probably personally, but certainly from reviewing these cases where someone afflicted with MS could have a really broad range of symptoms, and even day-to-day, a very broad range of symptoms, and we're not talking about particularly heavy work here, as Judge Weinerman mentioned. How important is that to the overall credibility determination? I would say it's not terribly important. I mean, the ALJ made a number of other findings. Can I just get you to, in the time remaining, what else supports the negative credibility determination? Sure, Your Honor. The ALJ noted here various other findings, and he noted, just as Your Honor was speaking of a little bit earlier, and as I noted earlier, the fact that non-surgical treatment was effective in controlling her symptoms. That was one finding. The ALJ noted various activities, which included her part-time work activity, her chores at home, which we talked about a little bit, her ability to pack for moving and other physical activities like that. The ALJ noted inconsistency with minimal objective findings, which I think I spoke about a little bit earlier in terms of the examinations generally showed tenderness, but otherwise normal findings. He found her testimony inconsistent with medical opinions, such as those from Dr. Sostowski and Dr. Carr. He found her testimony also inconsistent with various treatment notes where she reported only a one or two out of ten pain, which was inconsistent with her claims of debilitating, you know, nine or ten out of ten pain. I think you're out of time, but on that last point, wasn't that one or two, the report of a description of pain, a one out of two, doesn't that particular statement come after the relevant time period? I think that most of those are in the earlier part of 2013, some of them in the mid part of 2013. One response I give to that, I'd point out, is that the claimant hasn't testified at any point that her condition improved as of early 2013 in a drastic way, so that her pain was all of a sudden better or something afterwards, and I would note that at the hearing, oh I'm sorry, my time is up. That response is covered in your briefing, so I'm going to stop you there and just ask my colleagues if they have any additional questions. No, okay, thank you counsel for your argument. Sir, you have a couple of minutes for rebuttal. I'll leave it to the brief. I will just say though quickly that, you know, incredibility determinations are now subjective symptom findings. You know, as you guys, you know, indicate, the person doesn't need to be completely, you know, invalidated to be considered disabled. You know, these, she's attempting to work, you know, eight hours a week doing minimal, minimal things, and basically the ALJ took out Dr. Robinson's opinion and took out her credibility based on that minimal work throughout, and just some broad citation to objective findings. People, you know, react to pain in different ways. Her objective findings were consistent throughout, and she continually sought treatment. She attempted to work. Her testimony indicated pain working, so I really didn't see anything to detract from her credibility, and with that, your honors, I'll rest unless you have any questions. Any further questions? No, thank you both for your helpful argument. We'll submit this case, and we'll
judges: Christen, Feinerman, Bade